J-A04025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF S.M.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.M.F. | No. 1032 WDA 2014 |

Appeal from the Judgment Entered May 30, 2014
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-JV-0000014-2014

BEFORE: BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 13, 2015**

Juvenile Appellant, S.M.F., appeals from the judgment of sentence entered on May 30, 2014, following her summary conviction[1] for harassment, 18 Pa.C.S.A. § 2709(a)(1).  Upon review, we affirm.

The juvenile court set forth the facts and procedural history of this case as follows:

> [O]n or about February 27, 2014, [] Appellant, a twelve-year-old female, while attending school at the Tidioute Community Charter School, was directed by a teacher [] to enter the office at the school due to her misbehavior. [] Appellant closed the door to that office, would not allow the teacher in, and [] Appellant and teacher began pushing against each other with the door to the office.  The teacher suffered a shoulder injury as a result.  [On March 3, 2014,

_____

[1] A summary offense is not an act of delinquency under the Juvenile Act. 42 Pa.C.S.A. § 6302. "Thus, an individual who is under the age of 18 and convicted of a summary offense has not been adjudicated delinquent." **In re J.M.**, 42 A.3d 348, 353 (Pa. Super. 2012).  However, as discussed **infra**, Appellant was originally charged with aggravated assault, as well.  Thus, this case proceeded in juvenile court as an adjudication hearing.

*Retired Senior Judge assigned to the Superior Court.

the Commonwealth filed a written juvenile allegation and juvenile petition alleging dependency charging Appellant with harassment and one count of aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(3).] At [the adjudication] hearing, the Commonwealth moved to add a count of [a]ggravated [a]ssault under 18 Pa.C.S.A. § 2702(a)(5) and the [c]ourt granted the motion. The adjudication hearing occurred over two days on April 24, 2014, and May 30, 2014, with [] Appellant represented by private counsel. Following the hearing, the [c]ourt found that the Commonwealth did not meet its burden of proof beyond a reasonable doubt with respect to the two counts of [a]ggravated [a]ssault and, therefore, [] Appellant was determined not to be delinquent. The [c]ourt did find [] Appellant guilty of the summary offense of harassment and imposed a sentence of a $100.00 fine, costs, 20 hours of community service and a letter of apology to the victim pursuant to 42 Pa.C.S.A. § 6303(a)(5).

Juvenile Court Opinion, 7/21/2014, at 1-2. This timely appeal followed.[2]

On appeal, Appellant presents the following issues for our review:

I. Whether the trial court erred in finding sufficient evidence to prove the element of "intent" beyond a reasonable doubt for the summary offense of harassment, 18 Pa.C.S.A. § 2709(a)(1)?

II. Whether the trial court erred in finding that Appellant possessed the requisite specific intent under 18 Pa.C.S.A. § 2709(a)(1), when in fact, Appellant's actions were a manifestation of her disability?

III. Whether the trial court erred in disregarding the opinion testimony regarding Appellant's diagnosis of Oppositional Defiance Disorder?

_____

[2] Appellant filed a notice of appeal on June 27, 2014. On that same day, the juvenile court issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The juvenile court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 21, 2014.

Appellant's Brief at 9 (suggested answers omitted).

In her first issue presented, Appellant argues that the juvenile court erred by finding the Commonwealth presented sufficient evidence to support her adjudication. *Id.* at 16-20. She claims that the Commonwealth failed to prove that she had the intent to harass, annoy or alarm the victim as required under the harassment statute. *Id.* at 16. More specifically, Appellant contends:

> Appellant's actions occurred in reaction to a single, isolated, exigent circumstance that [the victim] testified was the consequence of her own actions, and not those of [] Appellant. […] Appellant is a special needs child with a diagnosis of [Oppositional Defiance Disorder ("ODD")], a behavioral disorder that by its very nature hinders a child's ability to recognize or appreciate that their [sic] behavior is defiant.

*Id.* at 17.

Thus, in sum, Appellant argues:

> Considering the totality of the circumstances and the testimony of [the victim], the [juvenile] court erred by inferring that [] Appellant knew or should have known that her conduct would harass, annoy, or alarm [the victim]. [] Appellant was confronted about her behavior three hours earlier, which triggered her ODD symptoms and caused her to become agitated and defiant. [] Appellant further reacted to being escorted by her teacher into a room with another special needs student known to have aggressive tendencies. In [the victim's] opinion, this caused [] Appellant to perceive that she had been placed into this situation by her teacher. [] Appellant's reaction to this situation included yelling, sitting on the floor, blocking the door, and in [the victim's] own opinion, intending to keep [the victim] out of the room. Although [] Appellant likely knew that she was blocking the door, at no point during the trial was any testimony elicited from which it could be

> inferred that [] Appellant knew or should have known that her actions would harass, annoy, or alarm [the victim].

*Id.* at 19-20.

As our Supreme Court has noted, the standard of review used when evaluating the sufficiency of the evidence in a conviction for a summary offense is

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Williamson*, 616 A.2d 980, 981 (Pa. 1992).

A person may be convicted of harassment "when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1). In addressing the proper interpretation of the statutory phrase "with intent to harass," this Court noted:

> The law does not permit an actor to avoid the consequences of [her] conduct by disclaimers of an intent to injure or harm or offend or "harass." Rather, the law obliges the factfinder to rely for the discernment of intent upon demonstrative manifestation of that intent. Every action produces a reaction, every act has an effect. The nature or essence of an act is most often, and usually convincingly, determined by its effect or result. When an individual **knows or should know** the consequences of his act, [s]he is presumed to be aware of the nature of [her] act, and [her] decision to perform the act is a manifestation of [her] intent to effect the results of [her] act.

- 4 -

*Commonwealth v. Hart*, 559 A.2d 584, 587 (Pa. Super. 1989) (citation omitted) (emphasis in original). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted).

Here, the juvenile court opined:

> It can certainly be inferred from [her] conduct that []
> Appellant [] intended to harass, annoy, or alarm the victim
> teacher by engaging in [the chosen] conduct. Appellant
> was a student under the victim's authority. She knew that
> the teacher wanted to enter the room where [] Appellant
> was placed. She was receiving verbal commands from the
> victim to stop her conduct and allow the victim in. By
> repeatedly kicking against the door and the victim and
> preventing her from entering, even after hearing and
> ignoring the demands of [the victim], it can be inferred that
> [] Appellant intended to harass, annoy, or alarm the victim.

Juvenile Court Opinion, 7/21/2014, at 3.

Upon review of the record, looking at the totality of the circumstances in the light most favorable to the Commonwealth as our standard requires, we agree. The victim testified that she questioned Appellant, one of her students, regarding her disrespect towards another teacher and Appellant started yelling. N.T., 4/24/2014, at 9. Appellant was directed to a nearby office and told to sit down inside. *Id.* at 11. Appellant went into the office and shut the door and dead-bolted it. *Id.* at 12. There was another student and a doctor, a special education supervisor, locked in the office with Appellant. *Id.* at 12-13. The doctor unlocked the office door and a struggle between the victim and Appellant ensued. *Id.* at 13-14. While the victim

tried to push the door open with her shoulder, Appellant pushed back. *Id.* at 15-16, 52. The victim estimated that she was hit in the shoulder by the door approximately 10-20 times. *Id.* at 16, 50. While this was happening, the victim asked Appellant "to please open the door." *Id.* at 45. Appellant was yelling, "leave me alone." N.T., 5/30/2014, at 55, 66. The doctor, who was still inside the office with Appellant, was instructing Appellant to get away from the door to let the victim inside. *Id.* at 66. The victim testified that she did not believe that Appellant intended to hurt her, but that Appellant knew what she was doing and it was Appellant's intent to keep her out of the office. *Id.* at 41-42, 65. The eyewitness doctor testified that she told Appellant to open the door. *Id.* at 84. Appellant replied that the victim put her in the office and she was not moving. *Id.* The doctor stated that she "believed that when [Appellant] was in that heightened state [Appellant] knew it was not right to be pushing against the door, but [] [did] not believe [Appellant] knew she was hurting [the victim]." *Id.* at 107. The doctor further stated that she "knew that [Appellant] was pushing the door to keep [the victim] out." *Id.* at 110.

Here, there is no dispute that the victim was subjected to physical contact and Appellant was the cause. Based upon all of Appellant's actions and words, we believe the Commonwealth proved intent under the harassment statute. Despite pleas to open the door at issue, Appellant persisted in pushing back and yelled to be left alone. As a student, she knew or should have known the consequences of her acts against her

- 6 -

teacher. Her continued perseverance in keeping the victim out of the office showed Appellant's intent to annoy, alarm, and harass. Accordingly, Appellant's first issue is meritless.

We will examine Appellant's second and third issues as presented together, wherein Appellant further contends that the juvenile court erred in convicting her of harassment because she lacked specific intent due to the manifestation of her ODD. Appellant's Brief at 20-27. Pointing to the Individuals with Disabilities Education Act, the Pennsylvania Code, and subsequent case law, Appellant argues, "[c]ourts have grappled with the difficult question, as to whether special needs children with behavioral issues should be disciplined by the school system or prosecuted by the judicial system when their behavior becomes severe." *Id.* at 22. Appellant contends that "the alleged victim and the [s]chool both understood that [] Appellant did not possess the intent required of any criminal statute." *Id.* at 24. Appellant asserts that the juvenile court erred in failing to "consider the opinion testimony of [the eyewitness doctor] regarding Appellant's ODD[,]" because of her "extensive educational background and work with special needs children" and she "was the only adult to witness the incident from within the office where [] Appellant was located." *Id.* at 25-26.

On these issues, the juvenile court determined:

> [] Appellant did not assert an affirmative defense of insanity or mental infirmity and the Pennsylvania Rules of Juvenile Court Procedure do not provide for such. [] Appellant did not file a request for a psychiatric evaluation. No case law was uncovered regarding an insanity or mental

infirmity defense in a juvenile proceeding. Instead, Appellant is asserting that [] Appellant's harassing conduct was a manifestation of her ODD and, therefore, the [c]ourt could not find that Appellant intended to harass, annoy[,] or alarm the victim, the mens rea requirement for a conviction. [] Appellant cites no support for this proposition and no such support could be found. [Thus, there is n]o appellate support for the proposition that ODD, recognized as one of the most common behavioral and emotional disorders among children, without a determination of insanity, [constitutes] a defense to criminal conduct.

* * *

It is often the juveniles in the delinquency system [who] carry this type of diagnosis and, if so, it is addressed at the disposition stage of the delinquency action. [The victim and the eyewitness doctor], while extremely experienced and qualified to work with children with ODD in the educational setting, are not psychologists or psychiatrists qualified to render expert testimony that [] Appellant was insane, nor has [] Appellant asserted [insanity] as a defense in this case. While the [c]ourt initially permitted testimony, it did not consider the testimony in determining the intent issue with respect to any of the crimes charged. The [c]ourt's refusal to consider the testimony as such was not error and, if in error, was harmless.

Juvenile Court Opinion, 7/21/2014, at 4-5.

We agree. "The general presumption is that every man is normal and is possessed of ordinary faculties; such defenses as intoxication, insanity, and aphasia (or a mind not conscious of its acts) are affirmative defenses, and the burden is on the defendant to establish them." ***Commonwealth v. Morrison***, 109 A. 878, 880 (Pa. 1920). "Under Pennsylvania Rule of Criminal Procedure 573, a defendant must disclose the assertion of certain defenses, such as alibi or insanity, before the commencement of a trial, thereby giving the Commonwealth notice and the opportunity to prepare its

- 8 -

case in chief." ***Commonwealth v. Collins***, 810 A.2d 698, 702 (Pa. Super. 2002)*, citing* Pa.R.Crim.P. 573(C)(1)(a), (b). Upon review, the only testimony presented related to ODD was the testimony offered by the victim teacher and the eyewitness doctor. Neither were qualified as experts. Their opinion testimony pertaining to ODD was limited to the challenges those witnesses faced with regard to educating Appellant. There was no medical testimony describing the actual condition or its effects on Appellant specifically. The witnesses that did testify knew Appellant's diagnosis, worked with her regularly in the educational setting, and still opined that Appellant understood the harassing nature of her conduct. Most notably, both witnesses stated that they did not believe Appellant intended to harm the victim physically, but that Appellant was able to appreciate that her conduct was nevertheless alarming, annoying, and harassing. Thus, we conclude that Appellant did not meet her burden of proving an affirmative defense. Having already determined there was sufficient evidence to support her conviction, Appellant's second and third issues must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015